**No. 24-20150**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**HARRIET PAYNE; CHARLES PAYNE, JR.; CAVIN PAYNE; STEPHANIE PAYNE; BETTY MORRISON; KIZZ GOINS; KATANIA DEARBORNE; ROBERT PAYNE,**

Plaintiffs - Appellees

v.

**CITY OF HOUSTON, TEXAS,**

Defendant - Appellant

---

On appeal from the United States District Court
Southern District of Texas
Houston Division

---

**BRIEF OF DEFENDANT - APPELLANT, CITY OF HOUSTON, TEXAS**

---

ARTURO G. MICHEL
City Attorney

Christy L. Martin
Chief, Torts/Civil Rights Section
Texas Bar No. 24041336
Federal Bar No. 754168
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby Street, 4th Floor
Houston, Texas 77002
832.393.6438 (telephone)
832.393.6259 (facsimile)
christy.martin@houstontx.gov

*Attorneys for Appellant*

# CERTIFICATE OF INTERESTED PERSONS

No. 24-20150

Harriet Payne; Charles Payne, Jr.; Cavin Payne; Stephanie Payne;
Betty Morrison; Kizz Goins; Katania Dearborne; Robert Payne,
*Plaintiffs - Appellees*
*v.*
City of Houston, Texas,
*Defendant - Appellant*

On appeal from No. 4:23-cv-04686

The undersigned counsel of record certifies that the persons and entities listed below as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs - Appellees**:
Harriet Payne
Charles Payne, Jr.
Cavin Payne
Stephanie Payne
Betty Morrison
Kizz Goins
Katania Dearborne
Robert Payne

**Counsel for Plaintiffs - Appellees**:
Paul A. Grinke
Aaron Dekle
BEN CRUMP LAW, PLLC
5 Cowboys Way, Suite 300
Frisco, Texas 75034

Carl Evans
Stephen M. Bergen
MCCATHERN, PLLC
3710 Rawlins St., Suite 1600
Dallas, Texas 75219

**Defendant - Appellant**:
City of Houston, Texas

**Counsel for Defendant - Appellant**:
Christy L. Martin
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby Street, 4th Floor
Houston, Texas 77002

## STATEMENT REGARDING ORAL ARGUMENT

Defendant – Appellant City of Houston, Texas ("Houston") believes that oral argument may be helpful to the Court. Although Houston sought permission to appeal the district court's denial of Houston's motion to dismiss Payne's *Monell* claims as part of these proceedings, that request was denied. Accordingly, the issues in this appeal are entirely questions of state law, specifically whether Houston's governmental immunity is waived under the Texas Tort Claims Act. Oral argument may aid the Court's resolution of these state law issues.

# GTABLE OF CONTENTS

**Page**

Certificate of Interested Persons ........ ii

Statement Regarding Oral Argument ........ iii

Table of Contents ........ iv

Index of Authorities ........ vii

Jurisdictional Statement ........ 1

Statement of Issues Presented for review ........ 2

Did the District Court err in denying Houston's 12(b)(6) motion to dismiss Payne's TTCA claims because Payne failed to plead facts to overcome Houston's governmental immunity? ........ 2

Statement of the Case ........ 3

Statement of Facts ........ 6

Summary of the Argument ........ 10

Argument ........ 12

I. Standard of Review ........ 12

A. Standard of Review under Rule 12(b)(6) ........ 12

B. Standard for pleading facts to overcome governmental immunity under Texas law. ........ 14

II. Seminal Authority ........ 17

A. Governmental immunity from suit is jurisdictional and subject to four special rules. ........ 17

1. Plaintiff retains the burden of proof to establish waiver of immunity. ........ 18

2. Waiver of immunity requires clear and unambiguous language. ....................19

3. All doubts are resolved in favor of retaining immunity...........20

4. Courts must defer to the legislature and cannot judicially-create immunity waiver theories. ....................20

B. Emergency exception ....................21

1. Responding to an emergency call or reacting to an emergency situation. ....................22

2. Violation of laws or ordinances applicable to the action..........24

3. Conscious indifference and reckless disregard. ....................25

4. Causal nexus ....................26

C. 9-1-1 Exception ....................27

III. The District Court erred in denying Houston's 12(b)(6) motion to dismiss Payne's TTCA claims because Payne failed to plead facts to overcome Houston's governmental immunity. ....................29

A. Payne failed to allege facts to negate application of the TTCA's emergency exception. ....................30

1. Payne alleged no facts to negate that Officer Cabrera was reacting to an emergency situation without recklessness. ........31

2. Payne failed to allege facts to negate that Officer Cabrera was continuing to respond to an emergency call consistent with applicable law. ....................32

3. Payne's arguments to the trial court as to why the emergency exception does not apply are untenable..................34

B. Plaintiffs fail to negate application of the TTCA's 9-1-1 exception. ....................38

C. The District Court's analysis for Officer Cabrera's dismissal necessitated dismissal of Payne's TTCA claims. ....................39

D. Negligence per se is not cognizable under the TTCA........................41

1. The TTCA does not clearly and unequivocally waive immunity for negligence per se theories..................................42

2. Viewing the TTCA wholistically, the absence of a violation of statute in the motor vehicle waiver—where other exceptions and exclusions are predicated on statutory violation—should be construed as rejecting negligence per se theories......................................................43

3. If the Legislature had clearly and unequivocally intended to waive governmental immunity for violations of the Transportation Code, it would have indicated as such in the Transportation Code.........................................................43

Conclusion ..........................................................................................46

Certificate of Service ..........................................................................47

Certificate of Compliance...................................................................48

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Baker Hughes Inc.*,
292 F.3d 424 (5th Cir. 2002)....14

*Alamo Heights Indep. Sch. Dist. v. Clark*,
544 S.W.3d 755 (Tex. 2018)....44

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....12, 13

*Austin Indep. Sch. Dist. v. Salinas*,
No. 03-14-00209-CV, 2016 WL 1566707 (Tex. App.—Austin Apr. 14, 2016, no pet.) (mem. op.)....44

*Bell Atl. Corp. v.* Twombly,
550 U.S. 544 (2007)....12, 13

*Broadway Nat'l Bank, Tr. of Mary Frances Evers Tr. v. Yates Energy Corp.*,
631 S.W.3d 16 (Tex. 2021)....24

*Cameron v. Terrell & Garrett, Inc.*,
618 S.W.2d 535 (Tex. 1981)....43

*Carter v. William Sommerville & Son, Inc.*,
584 S.W.2d 274, 278 (Tex. 1979)....41

*City of Amarillo v. Martin*,
971 S.W.2d 426 (Tex. 1998)....passim

*City of College Station v. Kahlden*,
No. 10-12-00262-CV, 2014 WL 1269026 (Tex. App.—Waco Mar. 27, 2014, pet. denied) (mem. op.)....23

*City of El Paso v. Hernandez*,
16 S.W.3d 409 (Tex. App.—El Paso 2000, pet. denied)....28

*City of Galveston v. State*,
217 S.W.3d 466 (Tex. 2007)....20

*City of Galveston v. Whitman*,
919 S.W.2d 929 (Tex. App.—Houston [14th Dist.] 1996 writ denied) .............28

*City of Houston v. Cruz*,
No. 01-22-00647-CV, 2023 WL 8938408 (Tex. App.—Houston [1st Dist.] Dec. 28, 2023, no pet.) (mem. op.) .............35, 42

*City of Houston v. Denby*,
No. 01-21-00422-CV, 2022 WL 3588753 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, no pet.) (mem. op.) .............28, 38, 39

*City of Houston v. Frazier*,
No. 01-21-00318-CV, 2022 WL 1216181 (Tex. App.—Houston [1st Dist.] Apr. 26, 2022, no pet.) (mem. op.) .............23

*City of Houston v. Green*,
672 S.W.3d 27 (Tex. 2023) (per curiam) .............26, 33, 34

*City of Houston v. Hernandez*,
No. 14-23-00916-CV, 2024 WL 3867828 (Tex. App.—Houston [14th Dist.] Aug. 20, 2024, no pet.) (mem. op.) .............37, 38

*City of Houston v. Sauls*,
690 S.W.3d 60 (Tex. 2024) .............32, 33

*City of Pasadena v. Kuhn*,
260 S.W.3d 93 (Tex. App.—Houston [1st Dist.] 2008, no pet.) .............26

*City of San Angelo Fire Dep't v. Hudson*,
179 S.W.3d 695 (Tex. App.—Austin 2005, no pet.) .............21, 22

*City of San Antonio v. Hartman*,
201 S.W.3d 667 (Tex. 2006) .............23, 36

*City of San Antonio v. Maspero*,
640 S.W.3d 523 (Tex. 2022) .............passim

*City of San Antonio v. Riojas*,
640 S.W.3d 534 (Tex. 2022) .............19

*County of Zapata v. Lopez*,
61 S.W.3d 581 (Tex. App.—San Antonio 2001, no pet.) .............28

*DeWitt v. Harris County*,
904 S.W.2d 650 (Tex. 1995) ....................21

*Dohlen v. City of San Antonio*,
643 S.W.3d 387 (Tex. 2022) ....................15, 18, 43

*Donahoe v. Jones*,
No. 01-15-00191-CV, 2016 WL 796892 (Tex. App.—Houston [1st Dist.] Mar. 1, 2016, no pet.) (mem. op.) ....................45

*Duhart v. State*,
610 S.W.2d 740 (Tex. 1980) ....................19

*Fed. Sign v. Tex. S. Univ.*,
951 S.W.2d 401 (Tex. 1997) ....................18

*Fort Worth Transp. Auth. v. Rodriguez*,
547 S.W.3d 830 (Tex. 2018) ....................20

*Funk v. Stryker Corp.*,
631 F.3d 777 (5th Cir. 2011) ....................6, 13, 29

*Garcia v. City of San Antonio*,
No. SA-06-CA-315-FB, 2006 WL 8434089 (W.D. Tex. Aug. 31, 2006), *report and recommendation adopted*, No. SA-06-CA-315-FB, 2006 WL 8434186 (W.D. Tex. Oct. 17, 2006) ....................29

*Guillen v. City of San Antonio*,
13 S.W.3d 428 (Tex. App.—San Antonio 2000, pet. denied) ....................28

*Hale v. King*,
642 F.3d 492 (5th Cir. 2011) ....................13

*Hogan v. Zoanni*,
627 S.W.3d 163 (Tex. 2021) ....................43

*In re First Rsrv. Mgmt., L.P.*,
671 S.W.3d 653, 661 (Tex. 2023) (orig. roceeding) ....................14, 15

*Jefferson County v. Hudson*,
No. 09-11-00168-CV, 2011 WL 3925724 (Tex. App.—Beaumont Aug. 25, 2011, no pet.) (mem. op.) ....................23

*Juarez v. Harris County*,
No. 01-18-00690-CV, 2019 WL 5699741 (Tex. App.—Houston [1st Dist.] Nov. 5, 2019, no pet.) (mem. op.)........23

*Magnolia Petroleum Co. v. Walker*,
125 Tex. 430, 83 S.W.2d 929 (1935)........19

*McDonald v. City of the Colony*,
No. 2-08-263-CV, 2009 WL 1815648 (Tex. App.—Fort Worth June 25, 2009, no pet.) (mem. op.)........42

*Md. Manor Assocs. v. City of Houston*,
816 F. Supp. 2d 394 (S.D. Tex. 2011)........13

*Mitschke v. Borromeo*,
645 S.W.3d 251 (Tex. 2022)........35

*Montoya v. FedEx Ground Package Sys., Inc.*,
614 F.3d 145 (5th Cir. 2010)........13

*Moughon v. Wolf*,
576 S.W.2d 603 (Tex. 1978)........41

*Norris v. Hearst Tr.*,
500 F.3d 454 (5th Cir. 2007)........13

*Perry v. S.N.*,
973 S.W.2d 301 (Tex. 1998)........41, 44

*Quested v. City of Houston*,
440 S.W.3d 275 (Tex. App.—Houston [14th Dist.] 2014, no pet.)........24

*Rattray v. City of Brownsville*,
662 S.W.3d 860 (Tex. 2023)........passim

*Reeder v. Daniel*,
61 S.W.3d 359 (Tex. 2001)........41

*Rhodes v. City of Arlington*,
215 F. App'x 329 (5th Cir. 2007)........1

*Sampson v. Univ. of Tex. at Austin*,
500 S.W.3d 380 (Tex. 2016)........17

*Sharyland Water Supply Corp. v. City of Alton*,
354 S.W.3d 407 (Tex. 2011) ....................21

*Sligh v. City of Conroe, Tex.*,
87 F.4th 290 (5th Cir. 2023)....................6, 14

*State v. Lueck*,
290 S.W.3d 876 (Tex. 2009) ....................17, 44

*State v. Oakley*,
227 S.W.3d 58 (Tex. 2007) ....................18

*Stiel v. Heritage Numismatic Auctions, Inc.*,
816 F. App'x 888 (5th Cir. 2020) (unpublished) ....................6

*Supreme Beef Packers, Inc. v. Maddox*,
67 S.W.3d 453 (Tex. App.—Texarkana 2002, pet. denied)....................41, 44

*Tarrant County v. Bonner*,
574 S.W.3d 893 (Tex. 2019) ....................26

*Taylor v. Books A Million, Inc.*,
296 F.3d 376 (5th Cir. 2002)....................13, 19, 20

*Tex. Dep't of Crim. Just. v. Parker*,
No. 10-18-00024-CV, 2020 WL 5833869 (Tex. App.—Sept. 30, 2020, no pet.) (mem. op.)....................42

*Tex. Dep't of Parks & Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004) ....................12, 18

*Tex. Dep't of Pub. Safety v. Little*,
259 S.W.3d 236 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ....................35, 36

*Tex. Nat. Res. Conservation Comm'n v. IT-Davy*,
74 S.W.3d 849 (Tex. 2002) ....................21

*Tex. Tech Univ. Sys. v. Martinez*,
691 S.W.3d 415 (Tex. 2024) ....................14

*Thoele v. Tex. Dep't of Crim. Just.*,
No. 10-18-00249-CV, 2020 WL 7687864 (Tex. App.—Waco Dec. 22, 2020, no pet.) (mem. op.)....................42

*Tooke v. City of Mexia*,
197 S.W.3d 325 (Tex. 2006) ....................12, 17

*Town of Shady Shores v. Swanson*,
590 S.W.3d 544 (Tex. 2019) ....................12, 18

*U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*,
336 F.3d 375 (5th Cir. 2003)....................13

*Univ. of Tex. Med. Branch at Galveston v. York*,
871 S.W.2d 175 (Tex. 1994) ....................19

*Univ. of the Incarnate Word v. Redus*,
602 S.W.3d 398 (Tex. 2020) ....................17

*Wichita Falls State Hosp. v. Taylor*,
106 S.W.3d 692 (Tex. 2003) ....................17

*Williams v. Mutia*,
No. 01-19-00340-CV, 2021 WL 3729312 (Tex. App.—Houston [1st Dist.] Aug. 24, 2021, no pet.) (mem. op.)....................45

*Zapata v. City of Gonzales*,
No. 13-18-00065-CV, 2020 WL 486489 (Tex. App.—Corpus Christi Jan. 30, 2020, no pet.) (mem. op.) ....................23

**Statutes**

42 U.S.C. § 1983 ....................4, 5, 39

Tex. Civ. Prac. & Rem. Code § 51.014....................1

Tex. Civ. Prac. & Rem. Code § 101.021....................18

Tex. Civ. Prac. & Rem. Code § 101.055....................passim

Tex. Civ. Prac. & Rem. Code § 101.062....................27, 28, 39, 43

Tex. Gov't Code § 311.034 ....................12, 17, 19

Tex. Gov't Code § 2400.002....................15

Tex. Transp. Code Ch. 545....................37

Tex. Transp. Code § 545.351 ....................................................................45

Tex. Transp. Code § 545.352 ....................................................................32

Tex. Transp. Code § 545.365 ....................................................................33

Tex. Transp. Code § 545.401 ....................................................26, 33, 45

Tex. Transp. Code Ch. 546.........................................................................37

Tex. Transp. Code § 546.001, *et seq*. .......................................................24

Tex. Transp. Code § 546.001 ....................................................24, 32, 37

Tex. Transp. Code § 546.002 ...........................................................25, 32

Tex. Transp. Code § 546.003 ...........................................................25, 33

Tex. Transp. Code § 546.004 ....................................................................25

Tex. Transp. Code § 546.005 ...........................................................25, 33

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..................................................................passim

## JURISDICTIONAL STATEMENT

In this appeal, Defendant City of Houston seeks review of the trial court's March 19, 2024, denying its Rule 12(b)(6) Motion to Dismiss Plaintiffs' claims brought pursuant to the Texas Tort Claims Act, based on governmental immunity. Texas law expressly permits interlocutory appeal of an order denying a plea to the jurisdiction by a governmental unit. Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). Additionally, because the interlocutory order denies Houston governmental immunity from suit under state law, it is treated as final for purposes of appellate jurisdiction under the collateral order doctrine. *Rhodes v. City of Arlington*, 215 F. App'x 329 (5th Cir. 2007).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Did the District Court err in denying Houston's 12(b)(6) motion to dismiss Payne's TTCA claims because Payne failed to plead facts to overcome Houston's governmental immunity?

## STATEMENT OF THE CASE

This is the second lawsuit brought by the family of Charles Payne, Sr. (collectively "Payne") arising from a December 26, 2021, collision between Charles Payne, Sr. and Houston Police Department Officer Christopher Cabrera ("Officer Cabrera").[1] On December 15, 2023, Houston moved for summary judgment on all of Payne's causes of action. ROA.128 *et seq*. Houston argued that Charles Payne proximately caused the accident because—while in the midst of a heart attack and diabetic emergency and while under the influence of marijuana—he made a left turn without yielding to oncoming traffic, including Officer Cabrera's police vehicle. ROA.130. If Charles Payne had stopped and yielded just two seconds, the accident would not have occurred. ROA.130, ROA.227-28. Houston also asserted both traditional and no-evidence points as to the applicability of the TTCA's emergency and 9-1-1 exceptions. ROA.137-45. Houston's evidence—which included testimony from Payne's retained testifying experts—conclusively demonstrated that the Officer Cabrera was continuing to respond to a 9-1-1 call regarding a suspected DWI case, and remained under time-pressure of getting charges filed promptly. ROA.137-45.

---

[1] The Court can take judicial notice of the state court filings, which are available at:

https://www.hcdistrictclerk.com/Edocs/Public/CaseDetails.aspx?Get=SvBY0pjtuRIEfu9ewfHNvXnTcEdSh0+3tHC5NC2lXVPVcn4QmmF7BTEXFGKslSvahAgeYiAZXKnHsH4UJE%2fA7IdjjjDOXn9BcPtqSurwS2U%3d

The same day Houston filed its motion, Payne non-suited all her claims in state court[2] and re-filed her complaint in the federal district court. ROA.6. In addition to her TTCA claims against Houston, Payne asserted § 1983 claims against Houston, as well as against Officer Cabrera individually. ROA.24-32.

On January 19, Officer Cabrera moved to dismiss the claims against him based on qualified immunity. ROA.53. That same day, Houston similarly moved to dismiss all the claims against it. ROA.106. Houston attached to its motion a certified copy of the summary judgment motion it filed a month earlier in state court. ROA.128. Houston also attached Officer Cabrera's affidavit and deposition testimony because Payne's complaint referred to his testimony no less than 13 times. ROA.151-52, ROA.303, ROA.432 (collecting paragraph references).

On March 19, 2024, the district court granted Officer Cabrera's motion to dismiss, but denied Houston's motion as to both the federal and state claims. ROA.460.

On April 8, 2024, Houston filed its notice of interlocutory appeal based on the denial of Houston's motion as to the TTCA claims. ROA.470. Houston then sought permission of the district court to appeal the trial court's denial of its motion

[2] *Available at:* https://www.hcdistrictclerk.com/Edocs/Public/ViewFilePage.aspx?Get=CU1sar6drIHpouiLpb1mP3mgwdGQO+vB2DwB+7SGgdkuk9Ph1NBAqJeJy5BLwPhIdOZk69m08F0GEprCVd31bNZ14+TcTk1K7IBFxAabQdPZixhssP+NGSAl5EGwQGP0zTD3G9FxkXM=v

with respect to Payne's § 1983 claims. ROA.473. The district court denied Houston's motion for permissive appeal. ROA.529.

## STATEMENT OF FACTS[3]

Officer Cabrera is a Houston Police Department patrol officer. ROA.151. On December 26, 2021, he was in full HPD uniform in a marked patrol vehicle. ROA.151. Shortly after beginning his shift he was dispatched to respond to a priority two emergency call regarding a suspected DWI. ROA.151. The call originated from the 9-1-1 emergency system. ROA.151.

Officer Cabrera traveled to the location of the DWI suspect and made the arrest. ROA.151. He transported the suspect to the Harris County Joint Processing Center (JPC) for further processing and detention. ROA.151. Once the suspect was booked—which took an extra-long time because the suspect was a foreign national who required translation services and refused breathalyzer and therefore required a blood warrant—he still needed to complete the offense report and charges. ROA.151. Charges need to be filed within two hours of a suspect being booked into JPC. ROA.151. Officer Cabrera knew it could take 45 minutes two an hour to get back to his station from downtown depending on traffic. ROA.151. So he remained under time pressure to get these charges filed. ROA.271-72. It is an

[3] These facts are drawn from Houston's summary judgment motion, not the complaint. As is discussed in more detail, the Court is authorized to take judicial notice of public records in prior state court proceedings. *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020) (unpublished); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). And if the attachments to a Rule 12(b)(6) contradict the allegations in the complaint, the attachments control. *Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 297 (5th Cir. 2023).

important public safety issue to ensure that DWIs are prosecuted; officers need to ensure DWI suspects are not released simply because charges are not promptly filed. ROA.272-73.

As he traveled northbound on North Shepherd, he was driving his vehicle in a manner that he believed was reasonable and prudent. ROA.151. He was obeying traffic signals and came to a complete stop at several red lights on North Shepherd. ROA.151. He was not accelerating aggressively. ROA.234-35, ROA.285-86. But he reached a peak speed of 70 mph for a few seconds. ROA.152, ROA.231.

Suddenly, a Cadillac sedan pulled out in front of him. ROA.152. He later learned it was driven by Charles Payne. ROA.152. Mr. Payne was making a left turn. ROA.152. At that point on North Shepherd, there is not a stop sign, stop light, or yield sign that controlled Officer Cabrera's northbound lanes of travel. ROA.152.

Mr. Payne, as the party making the left turn had the duty to yield to traffic heading northbound on Shepherd; he did not do so. ROA.257-58. In fact, Mr. Payne barely even slowed down before turning. He approached his left turn traveling in the high 20 mile per hour range and only slowed to the high 15 mile per hour range before entering the oncoming lanes. ROA.226. If he had come to a

complete stop and stopped for just two seconds the accident would not have occurred. ROA.226-27.

But when he made that turn, he was impaired and in the throes of a medical emergency. He was under the influence of marijuana, which can impair a person's ability to operate a motor vehicle, including judgment, ability to gauge speed and distance, and likelihood of distraction. ROA.260-61. Mr. Payne was having a heart attack as evidenced by the EMS EKG on-scene and further evidenced by the extremely narrowed left anterior descending coronary artery (aka the "widowmaker") noted in the medical examiner's autopsy. ROA.155. In addition, Mr. Payne's blood sugar (glucose) was extremely elevated. ROA.155. Though the normal range is 70-100 mg/dL, Mr. Payne's blood glucose at the time of the accident was over 500 mg/dL. ROA.155. Blood glucose levels this high would have almost certainly affect his vision, could have affected his judgment, and was a significant metabolic stressor that likely contributed to the acute heart attack he was having at the time of the subject auto accident. ROA.155. Indeed, uncontrolled blood sugar from diabetes can cause a person to fail a field sobriety test, causing them to appear intoxicated. ROA.263. Separately or combined with the impairing effects of THC, Mr. Payne's time perception, judgment, and coordination were impaired enough to turn left without looking or yielding to oncoming traffic. ROA.155.

Officer Cabrera had to react immediately to try to avoid a collision. ROA.152. He reacted by braking hard and turning the wheel to the left. ROA.152, ROA.240-41. He could see that the back seat was unoccupied; he figured if there would be a collision, he would try to minimize the harm to persons by aiming for the trunk of the vehicle or at least the back seat where no persons appeared to be sitting. ROA.152, ROA.240-41.

## SUMMARY OF THE ARGUMENT

Under Texas law, a plaintiff must plea sufficient factual content to not only bring their case within the Legislature's narrow waivers of governmental immunity, but also plead sufficient factual content to negate application of any of the exceptions to those waivers that are plausibly implicated based on the nature of the dispute. Payne did not meet this standard, particularly with respect to the TTCA's emergency and 9-1-1 exceptions. Payne's conclusory allegations that Officer Cabrera was not responding to a priority two emergency call that originated from the 9-1-1 system are not only entitled to no presumption of truth, they are conclusively disproven by the attachments to Houston's motion to dismiss, including Houston's state court summary judgment and Officer Cabrera's testimony in the state court case. Consideration of these attachments is wholly appropriate because Payne's complaint repeatedly referred to his testimony, and the state court pleadings—including Houston's summary judgment motion and exhibits—are public records that a court can consider in ruling on a 12(b)(6) without converting it to a motion for summary judgment.

Indeed, the district court expressly considered Officer Cabrera's testimony and concluded that this was just a tragic accident that occurred while Cabrera was on duty, following procedures, and attached to a police activity when the Decedent turned into oncoming traffic. Accordingly, Payne failed to meet her

burden to plausibly plead facts to demonstrate a causal nexus between her injuries and the illegal and/or reckless action of a government driver.

The Court should reverse and render judgment dismissing Payne's state law negligence claims for lack of subject-matter jurisdiction.

At a minimum, though, the Court should dismiss Payne's negligence per se theories because the TTCA does not clearly and unequivocally waive Houston's governmental immunity for such theories.

## ARGUMENT

Houston enjoys governmental immunity from suit and liability in the performance of its governmental functions unless that immunity has been waived by the Legislature in clear and unambiguous language. *See, e.g.*, *Tooke v. City of Mexia*, 197 S.W.3d 325, 343-44 (Tex. 2006); Tex. Gov't Code § 311.034. Governmental immunity deprives a trial court of subject-matter jurisdiction for suits against governmental units unless the government consents to suit. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 551 (Tex. 2019).

### I. Standard of Review

Because this is an appeal of a Rule 12(b)(6) motion to dismiss based on whether Payne pled sufficient facts to overcome Houston's governmental immunity, both the federal and state pleadings standards are relevant to this Court's adjudication of this appeal.

#### A. Standard of Review under Rule 12(b)(6)

If a complaint fails to state a claim upon which relief can be granted, a trial court may dismiss the complaint as a matter of law. *See* Fed. R. Civ. P. 12(b)(6); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Montoya v. FedEx Ground Package Sys., Inc.,* 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

"When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint and construes them in light most favorable to the plaintiff." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *see also U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citation omitted). However, courts are not bound to accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statement," or legal conclusions couched as factual assertions. *Iqbal*, 556 US at 678; *see also Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). Furthermore, a court may consider public records attached to the rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. *Md. Manor Assocs. v. City of Houston*, 816 F. Supp. 2d 394, 404 n.5 (S.D. Tex. 2011) (citing *Funk*, 631 F.3d at 783); *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). The court may also consider documents attached to the Rule 12(b)(6) motion that are referred to in the plaintiff's complaint and are central to the

plaintiff's claim. *Sligh*, 87 F.4th at 297. If the exhibit contradicts the allegation, the exhibit and not the allegation controls. *Id*.

This Court reviews a district court's dismissal under Rule 12(b)(6) de novo. *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002).

### B. Standard for pleading facts to overcome governmental immunity under Texas law.

Under Texas law, a cause of action has no basis in law if it is barred by an established legal rule and the plaintiff has failed to plead facts demonstrating that the rule does not apply. *See In re First Rsrv. Mgmt., L.P.*, 671 S.W.3d 653, 661 (Tex. 2023) (orig. proceeding). The Texas Supreme Court recently reemphasized that the notice-pleading rules require pleadings to not only give notice of the claim and the relief sought but also of the essential factual allegations. *Tex. Tech Univ. Sys. v. Martinez*, 691 S.W.3d 415, 419 (Tex. 2024) (citing *In re First Rsrv.*, 671 S.W.3d at 661-62). The court has explained many times, a "cause of action" means the "fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief." *In re First Rsrv.*, 671 S.W.3d at 662. It is not enough for the plaintiff to provide fair notice of the claims alleged because "[t]he pleading of a legal theory, without more, does not provide notice of the facts that could be pleaded to support that theory." *Id*. The plaintiff must plead "the essential factual

allegations supporting those claims", which must be sufficient to support a judgment if ultimately proven. *Id.*

Specifically with respect to governmental immunity, in *Dohlen v. City of San Antonio*, the Supreme Court considered whether the petition alleged a waiver of governmental immunity under Tex. Gov't Code § 2400.002, colloquially known as the "Save Chick-fil-a law." *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 389 (Tex. 2022). In considering this question, the Court recognized:

> When immunity is waived for an alleged violation of a statute, at the jurisdictional stage, a plaintiff must "actually allege" a violation of the statute. "Mere reference" to the statute's elements in the pleading is not enough. A plaintiff "actually alleges" violation of a statute "by pleading facts that state a claim thereunder." Requiring the plaintiff's pleading to stand on more than bare allegations to trigger immunity protects the use of pleas to the jurisdiction, a longstanding "procedural vehicle to challenge subject matter jurisdiction" that has been used in our "trial courts for over a century and a half."

*Id*. at 392–93 (citations omitted).

More recently, the Supreme Court expanded *Dohlen* holding that to demonstrate the trial court's subject matter jurisdiction, the plaintiff must not only allege facts that bring a claim within the waiver, but also negate any provisions that create exceptions to, and thus withdraw the waiver. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 867 (Tex. 2023). More specifically:

> The starting point is always the status quo: a presumption against any waiver until the plaintiff establishes otherwise.

> To do so, a plaintiff may invoke various provisions in Subchapter B of the Act that affirmatively describe when immunity is waived. Without such a provision, no court is empowered to hear tort cases against and impose liability on "governmental unit[s]." The Act's detailed descriptions of the contours of the waiver of immunity delineate the extent of the judicial authority. A plaintiff must begin, therefore, by alleging circumstances that fit within a provision of the Act that authorizes a waiver, such as the homeowners' assertion here that the flooding of their homes followed from circumstances described in § 101.021(1)(A).
>
> But a plaintiff cannot stop there. The Act also provides various exceptions or caveats that function as a withdrawal of the waiver, and thus of the court's jurisdiction to proceed, under certain conditions.
>
> ***
>
> To be sure, no great effort is needed to negate many or indeed most statutory exceptions to the general waiver of immunity. A plaintiff has never had to march through the Act provision by provision. Pleadings whose affirmative allegations functionally exclude the exceptions are typically sufficient. Plaintiffs thus need only expressly negate those exceptions that their allegations plausibly implicate, which will depend on the nature of the dispute. It will be readily apparent in most cases, for example, that the defendant is not a state legislator and is not being sued for an "act or omission ... in his official capacity" as a legislator, § 101.052, so plaintiffs will not need to affirmatively or explicitly negate that exception (or any other plainly inapplicable one) in their pleadings.

*Rattray*, 662 S.W.3d at 866-68.

## II. Seminal Authority

The issues in this case exclusively involve questions of state law. Accordingly, Houston presents the following summary of the seminal Texas authority to aid the Court's resolution of this appeal.

### A. Governmental immunity from suit is jurisdictional and subject to four special rules.

Predicated upon the ancient proposition that the king can do no wrong but maintained to preserve executive and legislative power from judicial encroachment and protect the public treasury, sovereign immunity bars suit against the State of Texas unless the Texas Legislature has waived immunity in clear and unambiguous language. *Univ. of the Incarnate Word v. Redus*, 602 S.W.3d 398, 404 (Tex. 2020); Tex. Gov't Code § 311.034. Its corollary, governmental immunity, protects political subdivisions of the State, including counties, cities, and school districts. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether. *Tooke*, 197 S.W.3d at 332; *see also Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016); *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009). Immunity from liability is an affirmative defense,

but immunity from suit deprives a court of subject matter jurisdiction. *Miranda*, 133 S.W.3d at 224.

Because governmental immunity from suit is implicated here, four overlapping "special rules" circumscribe this Court's analysis. *See State v. Oakley*, 227 S.W.3d 58, 62 (Tex. 2007).

**1. Plaintiff retains the burden of proof to establish waiver of immunity.**

The plaintiff maintains the burden to affirmatively demonstrate the trial court's jurisdiction, which includes establishing a waiver of immunity in suits against the government. *Rattray*, 662 S.W.3d at 865; *Dohlen*, 643 S.W.3d at 392–93; *Shady Shores*, 590 S.W.3d at 550; *Jones*, 8 S.W.3d at 638; *Miranda*, 133 S.W.3d at 226. The plaintiff can do so only by demonstrating that the legislature, as the branch of government constitutionally empowered to manage the State's financial affairs, has waived immunity by statute. *Rattray*, 662 S.W.3d at 865 (citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997)).

A plaintiff must begin, therefore, by alleging circumstances that fit within a provision of the Act that authorizes a waiver. *Id.* This means the plaintiff must establish all essential elements under 101.021's waiver provisions. *See* Tex. Civ. Prac. & Rem. Code § 101.021.

But a plaintiff cannot stop there. *Rattray*, 662 S.W.3d at 866. The plaintiff must also negate the TTCA's exceptions and exclusions. *Id.*; *City of San Antonio v. Maspero*, 640 S.W.3d 523, 529 (Tex. 2022); *City of San Antonio v. Riojas*, 640 S.W.3d 534, 537 (Tex. 2022).

**2. Waiver of immunity requires clear and unambiguous language.**

The Supreme Court has long required that immunity be waived in clear and unambiguous language. *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994); *Duhart v. State*, 610 S.W.2d 740, 742 (Tex. 1980). Indeed, as early as 1935, the Supreme Court held: "[W]hatever is not unequivocally granted in clear and explicit terms is withheld. Any ambiguity or obscurity in the terms of the statute must operate in favor of the state." *Magnolia Petroleum Co. v. Walker*, 125 Tex. 430, 441, 83 S.W.2d 929, 934 (1935).

In 2001, the Legislature ratified this approach by adding section 311.034 to the Code Construction Act. *See Wichita Falls State Hosp.*, 106 S.W.3d at 696. That section provides: "In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." Tex. Gov't Code § 311.034.

#### 3. All doubts are resolved in favor of retaining immunity.

There is a heavy presumption in favor of immunity. *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007). As such, a court must resolve all ambiguities in statutes by retaining immunity. *Wichita Falls State Hosp.*, 106 S.W.3d at 697. And in analyzing each case, the Court's starting point is always the status quo: a presumption against any waiver until the plaintiff establishes otherwise. *Rattray*, 662 S.W.3d at 866.

#### 4. Courts must defer to the legislature and cannot judicially-create immunity waiver theories.

Policy justifications for immunity—and by extension, for limitations on waivers of immunity—revolve around protecting the public treasury. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 839 (Tex. 2018). The doctrine protects the State and its political subdivisions from lawsuits for money damages and other forms of relief, and leaves to the Legislature the determination of when to allow tax resources to be shifted away from their intended purposes toward defending lawsuits and paying judgments. *Id.* Only the legislature—as the branch of government constitutionally empowered to manage the State's financial affairs—can waive immunity. *See Rattray*, 662 S.W.3d at 867.

As a result, the Supreme Court defers to the Legislature to define the contours of any waiver of immunity. *DeWitt v. Harris County*, 904 S.W.2d 650, 652

(Tex. 1995). As a corollary to this deference, the Supreme Court has long-since rejected judicially-created waivers of governmental immunity. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 856-57 (Tex. 2002).

**B. Emergency exception**

The emergency exception is set forth in Section 101.055 of the Texas Civil Practice and Remedies Code:

> This chapter does not apply to a claim arising: … (2) from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others…

Tex. Civ. Prac. & Rem. Code § 101.055(2). If the plaintiff's claims fall within the TTCA's emergency exception, then the TTCA does not waive government immunity, regardless of whether they would otherwise fall within the scope of the waiver. *Maspero*, 640 S.W.3d at 529.

The underlying policy of the emergency exception is to balance the safety of the public with the need for prompt response from emergency personnel. *See City of Amarillo v. Martin*, 971 S.W.2d 426, 429 (Tex. 1998); *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 699 (Tex. App.—Austin 2005, no pet.).

Imposing liability for a mere failure in judgment could deter emergency personnel from acting decisively and taking calculated risks. *See Martin*, 971 S.W.2d at 430; *Hudson*, 179 S.W.3d at 699.

The plaintiff retains the burden to negate the emergency exception's applicability. *Maspero*, 640 S.W.3d at 529. As such, to avoid the exception and demonstrate subject-matter jurisdiction, the plaintiff must plead and present evidence of one of the following: (1) the government employee was not responding to an emergency call or reacting to an emergency situation, (2) his actions were not in compliance with the laws and ordinances applicable to emergency action, or (3) he was consciously indifferent or reckless. *Maspero*, 640 S.W.3d at 529. But because 101.055 requires that a plaintiff's injuries must arise from a governmental employee's reckless or illegal action, to avoid application of the exception, the plaintiff must plead and prove a causal nexus between plaintiff's injury and the reckless or illegal action. *Id.* at 531. These elements are discussed in more detail below.

### 1. Responding to an emergency call or reacting to an emergency situation.

The TTCA does not define the term "emergency situation." the TTCA does not define the terms "emergency call" or "emergency situation," but Texas courts have interpreted the term "emergency" broadly. *City of San Antonio v.*

*Hartman*, 201 S.W.3d 667, 673 (Tex. 2006); *City of Houston v. Frazier*, No. 01-21-00318-CV, 2022 WL 1216181, at *9 (Tex. App.—Houston [1st Dist.] Apr. 26, 2022, no pet.) (mem. op.); *Zapata v. City of Gonzales*, No. 13-18-00065-CV, 2020 WL 486489, at *4 (Tex. App.—Corpus Christi Jan. 30, 2020, no pet.) (mem. op.); *Juarez v. Harris County*, No. 01-18-00690-CV, 2019 WL 5699741, at *6 (Tex. App.—Houston [1st Dist.] Nov. 5, 2019, no pet.) (mem. op.); *City of College Station v. Kahlden*, No. 10-12-00262-CV, 2014 WL 1269026, at *5 (Tex. App.—Waco Mar. 27, 2014, pet. denied) (mem. op.); *Jefferson County v. Hudson*, No. 09-11-00168-CV, 2011 WL 3925724, at *3 (Tex. App.—Beaumont Aug. 25, 2011, no pet.) (mem. op.). Indeed, *Hartman* reasoned that while there will be some cases in which the existence of an emergency is unclear, the public policy is better served by encouraging employees to take immediate action in emergency situations, rather than by suing them later if their actions were imprudent. *Id.*

The plain language of the TTCA's emergency exception is disjunctive, applying when a government employee is ***either*** responding to an emergency call ***or*** reacting to an emergency situation:

> This chapter does not apply to a claim arising: …(2) from the action of an employee while responding to an emergency call ***or*** reacting to an emergency situation….

Tex. Civ. Prac. & Rem. Code § 101.055 (emphasis added); *see also Broadway Nat'l Bank, Tr. of Mary Frances Evers Tr. v. Yates Energy Corp.*, 631 S.W.3d 16, 24 (Tex.

2021) ("[T]his Court has recognized that "or" is typically understood as a disjunctive term, meaning that either of the separated words or phrases may be employed without the other.").

Two panels of the Fourteenth Court recognized that responding to an emergency call and reacting to an emergency situation are two different things. *Quested v. City of Houston*, 440 S.W.3d 275, 284 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

**2. Violation of laws or ordinances applicable to the action**

A police department's internal policies, in and of themselves, are not laws or ordinances. *Maspero*, 640 S.W.3d at 530. In cases involving motor vehicle collisions with emergency vehicles, the plaintiff seeking to overcome the emergency exception must establish a violation of Chapter 546 of the Texas Transportation Code. *See* Tex. Transp. Code § 546.001, *et seq*. To the extent an officer complies with Chapter 546's provisions, the TTCA's emergency exception reinstates immunity. Accordingly, a brief summary of the relevant provisions is presented here.

Section 546.001 permits emergency vehicles to engage in conduct that would otherwise violate the rules of the road, including exceeding the speed limit. *See* Tex. Transp. Code § 546.001.

Section 546.002 describes the conditions under which an operator can engage in the conduct permitted under section 546.001, including when responding to an emergency call. *See* Tex. Transp. Code § 546.002.

Section 546.003 requires emergency vehicles engaged in the conduct permitted in section 546.001 to use visual and audible signals at the discretion of the operator in accordance with the policies of the department or local government. Tex. Transp. Code § 546.003; *Maspero*, 640 S.W.3d at 530-31.

Section 546.004 sets forth the exceptions to the signal requirement. *See* Tex. Transp. Code § 546.004. Relevant here, a police officer may operate his vehicle without an audible or visual signal if the officer is complying with a written regulation adopted by his employer local government or department. *Id.*

Finally, section 546.005 states that the chapter does not relieve the operator from the duty to operate with appropriate regard for the safety of all persons or the consequences of reckless disregard for the safety of others. Tex. Transp. Code § 546.005. Although this provision imposes a duty to drive with due regard for others by avoiding negligent behavior, it only imposes liability for reckless conduct. *Martin*, 971 S.W.2d at 431. Recklessness is discussed in more detail below.

**3. Conscious indifference and reckless disregard.**

Under the Transportation Code, reckless driving consists of driving a vehicle in willful or wanton disregard for the safety of persons or property. *Maspero*,

640 S.W.3d at 531 (citing Tex. Transp. Code § 545.401(a)). This standard requires showing subjective awareness of an extreme risk. *Id.* (citing *Tarrant County v. Bonner*, 574 S.W.3d 893, 902 (Tex. 2019)). Further, recklessness reflects more than a momentary judgment lapse—it requires showing that the driver has committed an act he knew or should have known posed a high degree of risk of serious injury. *Id.*; *Martin*, 971 S.W.2d at 429–30; *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 99 (Tex. App.—Houston [1st Dist.] 2008, no pet.). If the officer's actions during the chase indicate that the officer engaged in some degree of risk assessment or demonstrate intent to minimize potential harm, their actions do not raise an inference of recklessness to defeat the emergency exception. *Maspero*, 640 S.W.3d at 532.

The Texas Supreme Court has not yet determined the type of high-speed travel that, by itself, could support a finding of reckless disregard. *City of Houston v. Green*, 672 S.W.3d 27, 31 (Tex. 2023) (per curiam). But where the officer has testified to traveling roughly 10-20 miles over the speed limit, testimony that the officer was traveling "very fast" or "at a high rate of speed" are not sufficiently specific to create a genuine issue of material fact as to recklessness. *Id.*

#### 4. Causal nexus

In *Maspero*, the Court confirmed that the TTCA's emergency exception requires a plaintiff to demonstrate a causal nexus between the plaintiff's claim and the government employee's reckless or illegal action. *Maspero*, 640 S.W.3d at 531.

In that case, the plaintiff alleged that the officer was not using her siren and the Court confirmed that there was conflicting evidence in the record as to whether the siren was activated. *Id.* at 529, 531. The Court held that such a fact dispute was inconsequential because either way, "the Masperos fail to explain how their injuries arose from Officer Kory's alleged failure to use her siren. It is undisputed that she had activated her emergency lights…Any suggestion that the siren would have prevented the collision…is speculation at best. Therefore, the evidence that Officer Kory failed to use her siren does not foreclose the Act's emergency exception." *Id.* at 531.

### C. 9-1-1 Exception

The 9-1-1 exception is set forth in section 101.062:

> This chapter applies to a claim against a public agency that arises from an action of an employee of the public agency or a volunteer under the direction of the public agency and that involves providing 9-1-1 service or responding to a 9-1-1 emergency call only if the action violates a statute or ordinance applicable to the action.

Tex. Civ. Prac. & Rem. Code § 101.062(b). When this exception applies, a general waiver of immunity under the statute is not effective, and the governmental entity retains its immunity. *See generally*, *City of Houston v. Denby*, No. 01-21-00422-CV, 2022 WL 3588753 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, no pet.)

(mem. op.); *City of El Paso v. Hernandez*, 16 S.W.3d 409, 416 (Tex. App.—El Paso 2000, pet. denied).

Although the TTCA does not define "9-1-1 emergency call," the statute defines "9-1-1 emergency service" consistent with the Health and Safety Code, which defines "9-1-1 service" as "communications service that connects users to a public safety answering point through a 9-1-1 system." *Denby*, 2022 WL 3588753, at *5. Considering the language of the statute, a 9-1-1 call is a call placed to a 9-1-1 service. *Id.* Nothing in this statute requires that the employee or volunteer be acting under the pressure of an emergency response. *Id.*

To avoid the 9-1-1 exception, a plaintiff must plead and prove that their claim: 1) "arises from" an action of an employee; and 2) the action of the employee violates a statute or ordinance applicable to the action of the employee. *See Denby*, 2022 WL 3588753, at *7. Absent a violation of a statute or ordinance, the plaintiff's claims are excepted from the TTCA's limited waiver of immunity. Tex. Civ. Prac. & Rem. Code § 101.062(b); *County of Zapata v. Lopez*, 61 S.W.3d 581, 584 (Tex. App.—San Antonio 2001, no pet.); *Guillen v. City of San Antonio*, 13 S.W.3d 428, 432 (Tex. App.—San Antonio 2000, pet. denied); *City of Galveston v. Whitman*, 919 S.W.2d 929, 931-32 (Tex. App.—Houston [14th Dist.] 1996 writ denied); *see also Garcia v. City of San Antonio*, No. SA-06-CA-315-FB, 2006 WL 8434089, at *11 (W.D. Tex. Aug. 31, 2006), *report and recommendation adopted*, No. SA-06-CA-

315-FB, 2006 WL 8434186 (W.D. Tex. Oct. 17, 2006) ("Plaintiffs have not alleged the violation of any other statute or ordinance that imposed an affirmative duty on defendants to respond to the 911 emergency call at issue in a specific manner, as required to avoid the exception afforded by § 101.062.").

## III. The District Court erred in denying Houston's 12(b)(6) motion to dismiss Payne's TTCA claims because Payne failed to plead facts to overcome Houston's governmental immunity.

Because Payne initially filed suit in state court—and proceeded in discovery for nearly a year before re-filing her claims in federal court the day that Houston filed its summary judgment motion in state court—Payne had already deposed Cabrera. Payne's complaint relied heavily on his testimony and expressly referenced it repeatedly throughout. Though Payne objected to the District Court's consideration of this testimony in resolving Houston's motion, the District Court noted that it did, indeed review and consider the testimony. ROA.467. Accordingly, this Court can consider the testimony in adjudicating this appeal.

Indeed, the Court can consider the entirety of Houston's summary judgment motion from the state court proceeding, because it is a matter of public record and subject to judicial notice. *Funk*, 631 F.3d at 783. Doing so is particularly appropriate here to prevent Payne from an unwarranted "do-over" for the state court claims which had been litigated for roughly a year and reached summary judgment before Payne re-asserted them in federal court.

Against the backdrop of these judicially-noticed facts, Payne's complaint did not meet the burden to plead facts to negate application of the TTCA's emergency and 9-1-1 exceptions, and therefore, did not allege sufficient factual content for Payne to overcome Houston's governmental immunity under either state or federal pleading standards.

### A. Payne failed to allege facts to negate application of the TTCA's emergency exception.

As discussed in section I.B.1., because the two conditions under which the emergency exception are disjunctive, to negate application of the emergency exception, Payne had to negate ***not only*** that Officer Cabrera was not responding to an emergency call ***but also*** was not reacting to an emergency situation.

Payne alleged that Officer Cabrera was not "responding to an emergency". ROA.7, ROA.11. Not only is this conclusory allegation not entitled to a presumption of truth because Officer Cabrera's testimony establishes otherwise, it conflates the two distinct statutory predicates for application of the exception. *See* section II.B.1. *supra*. Examining each of the distinct statutory predicates separately compels the conclusion that Payne alleged insufficient *factual* content to overcome application of the exception.

### 1. Payne alleged no facts to negate that Officer Cabrera was reacting to an emergency situation without recklessness.

Payne alleged no facts to negate that, for purposes of the TTCA's emergency exception, Officer Cabrera was reacting to an emergency situation caused when Charles Payne Sr. pulled out right in front of him. *See* Tex. Civ. Prac. & Rem. Code § 101.055. To the contrary, Payne expressly pled that Charles Payne was traveling southbound on Shepherd and started to make a left turn, ROA.12, and slowed but did not stop before beginning his left turn. ROA.13. Under these facts, Payne had a duty to yield to oncoming traffic, i.e. Officer Cabrera. And when asked what active emergency he was responding to, Officer Cabrera testified "[T]he vehicle that pulled out in front of me." ROA.77.

Officer Cabrera immediately reacted by braking hard and turning the wheel to the left. ROA.152, ROA.240-41, ROA.280. He could see that the back seat was unoccupied; he figured if there would be a collision, he would try to minimize the harm to persons by aiming for the trunk of the vehicle or at least the back seat where no persons appeared to be sitting ROA.152, ROA.240-41, ROA.280. These actions indicate that Officer Cabrera engaged in some degree of risk assessment and intended to minimize potential harm; no recklessness can be inferred. *Maspero*, 640 S.W.3d at 532.

### 2. Payne failed to allege facts to negate that Officer Cabrera was continuing to respond to an emergency call consistent with applicable law.

Plaintiffs expressly pled that at the time this accident occurred, Officer Cabrera testified he was still assigned to a call. ROA.27. In fact, Officer Cabrera testified that the call he was assigned to was a priority two emergency call for a suspected DWI. ROA.151, ROA.77-78. And although the suspect was booked, Officer Cabrera still needed to complete the offense report and charges. ROA.151. Indeed, Plaintiffs admit that Officer Cabrera remained under some sort of time pressure associated with this DWI investigation. ROA.26. And Officer Cabrera confirmed that because he was still assigned to the emergency call, he was not available to take other calls for service, and could not self-initiate other police activity. ROA.152, ROA.77-78.

While Payne repeatedly alleged that Officer Cabrera exceeded the posted speed limit. ROA.6, ROA.7, ROA.8, ROA.11-12, merely exceeding the posted speed limit is not a per se violation of law under the Transportation Code. *See* Tex. Transp. Code § 545.352; ROA.81-82, ROA.277. Furthermore, state law expressly authorizes police officers do so when responding to emergency calls. *See* Tex. Transp. Code § 546.001(3); Tex. Transp. Code § 546.002(b)(1); ROA.274 (conceding Texas law leaves speed to an officer's discretion); *see also City of Houston v. Sauls*, 690 S.W.3d 60, 67 (Tex. 2024) (recognizing testimony from HPD

expert that it is common for officers responding to a priority two call for service for a suicide in progress to travel 15 to 20 miles per hour over the speed limit).[4]

State law also leaves the use lights and siren to the discretion of the operator in accordance with the policies of the department. Tex. Transp. Code § 546.003. Officer Cabrera testified that this call was a priority two call for which the standard response is without emergency equipment ROA.150; *see also Sauls*, 690 S.W.3d 60 at 76 (recognizing standard response to priority two call for service is without emergency equipment).

Finally, Tex. Transp. Code § 546.005 only imposes liability for reckless conduct. *Martin*, 971 S.W.2d at 431. Reckless driving consists of driving a vehicle in willful or wanton disregard for the safety of persons or property. *Maspero* 640 S.W.3d at 531 (citing Tex. Transp. Code § 545.401(a)). Plaintiffs' allegations of recklessness are premised solely upon Officer Cabrera's speed. ROA.7. The Texas Supreme Court has yet to identify a speed that—by itself—would enable a court to infer recklessness. *See Green*, 672 S.W.3d at 31 (holding there was no evidence to establish the type of high-speed travel that, by itself, could support a finding of

---

[4] Payne's expert in the trial court proceeding described Officer Cabrera as being on "routine patrol" but then changed his opinion upon learning that Officer Cabrera was still assigned to the priority two call for service and was placed outside the call for service loop. ROA.264-69. Nevertheless, the Texas Transportation Code also expressly exempts police officers on patrol from application of the speed limits. Tex. Transp. Code § 545.365(a)(1)-(2). ("The regulation of the speed of a vehicle under this subchapter does not apply to: (1) an authorized emergency vehicle responding to a call; (2) a police patrol…").

reckless disregard). Despite that speed, Officer Cabrera testified that he was operating his vehicle in a manner that was reasonable and prudent ROA.151. He was obeying traffic signals and came to a complete stop at several red lights. ROA.151 He maintained visibility on the street and the road ahead of him. ROA.152. And he expressly denied Plaintiffs' counsel's suggestion that he was driving in a reckless manner. ROA.315.

Furthermore, the record establishes that Officer Cabrera only very briefly reached a peak speed of 70 m.p.h.—just 2.5 seconds. ROA.152, ROA.231. A mere momentary judgment lapse that does not defeat application of the emergency exception. *Green*, 672 S.W.3d at 31.

**3. Payne's arguments to the trial court as to why the emergency exception does not apply are untenable.**

Payne argued to the trial court her conclusory allegation that Plaintiffs "Cabrera was acting in the course and scope of his employment with the City and operated his vehicle negligently" was sufficient to plead a waiver of Houston's governmental immunity under the TTCA. ROA.365. Payne's arguments ignored both *Rattray* and *Maspero* and instead relied upon an unpublished opinion from the First Court of Appeals, decided at summary judgment stage and arising from a case involving an animal control officer, rather than a police officer. *City of Houston v. Cruz*, No. 01-22-00647-CV, 2023 WL 8938408, at *1 (Tex. App.—Houston [1st

Dist.] Dec. 28, 2023, no pet.) (mem. op.). Nevertheless, in the event of a conflict, *Cruz* must give way under vertical stare decisis. *Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022).

Payne also argued to the trial court that she "expressly pled that Cabrera was not responding to a call, was not responding to an emergency, and was not responding to a 9-1-1 call at the time of the collision." ROA.365. But Payne ignored that these conclusory allegations are not entitled to a presumption of truth because they are plainly contradicted by Officer Cabrera's testimony and the other attachments to Houston's motion to dismiss. ROA.151-52, ROA.309-10. Indeed, it is unrefuted that Officer Cabrera was still assigned to a priority two emergency call at the time of the accident; but Payne asserted that because the "emergency situation" had subsided the exception no longer applies. Tex. Civ. Prac. & Rem. Code § 101.055. However, as discussed in sections II.B.1, and III.A., *supra*, due to the disjunctive nature of the exception, the emergency exception applies when an officer is still responding to an emergency call, even if the situation they are responding to is no longer (or in fact, never was) an emergency. *Tex. Dep't of Pub. Safety v. Little*, 259 S.W.3d 236, 239 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In *Little*, a state trooper was dispatched to respond to a "10-99," a code that signified that an officer requested emergency assistance with a wanted person. *Id.* After driving for a few minutes, he slowed down and called dispatch regarding

the urgency of the call, due to the fact that he was the only unit dispatched. *Id.* The accident occurred shortly thereafter. *Id.*

Little argued that the emergency exception did not apply, because the trooper did not subjectively believe he was responding to an emergency situation, or he doubted the emergency nature of the call. *Id.* at 239. Recognizing that the dispatcher should have identified the call as a "10-66," which is a non-emergency call, the court nevertheless held "he was responding to an 'emergency call' even though the call did not correspond to the 'emergency situation' it purported to identify." *Id.*

With respect to "reacting to an emergency situation" Payne's only response was that "this type of situation is not contemplated by the emergency exception otherwise every single car wreck involving an officer would constitute an emergency" ROA.366-67. But as discussed in section II.B.1., *supra*, the Supreme Court has instructed that the provision is broadly construed to avoid excluding situations the Legislature may have meant to include. *Hartman*, 201 S.W.3d at 673. In absence of any clear and unequivocal language excluding this type of situation from the exception's applicability, the district court had no choice but to dismiss.

The Houston Fourteenth Court of Appeals reversed a trial court's order denying dismissal on the pleadings and rendered judgment dismissing a plaintiff's suit based on the emergency and 9-1-1 exceptions. *City of Houston v. Hernandez*,

No. 14-23-00916-CV, 2024 WL 3867828, at *2 (Tex. App.—Houston [14th Dist.] Aug. 20, 2024, no pet.) (mem. op.). The court recognized that the plaintiff had the burden to both affirmatively show a waiver of immunity and also plead facts negating the applicability of the emergency and 9-1-1 exceptions because his pleadings implicated those exceptions. *Id.* The court stated that to do so, the plaintiff needed to allege that the driver's acts were not in compliance with the statutes, laws, or ordinances applicable to emergency action. *Id.* at *3. The court recognized that while the plaintiff disputed whether the driver had his emergency equipment activated, that alone does not indicate noncompliance with the laws; depending on the situation, lights and sirens are not always required to be activated. *Id.* Similarly, the plaintiff's allegation that an HPD investigation found that the driver failed to control speed and exercise due caution did not amount to a factual allegation of noncompliance with applicable laws and ordinances, noting Transportation Code § 546.001 allows officers to exceed a maximum speed limit under certain circumstances. *Id.* Moreover, allegations that the driver was negligent by being inattentive, failing to keep a proper lookout and failing to obey the provisions in Transportation Code Chapter 545 do not overcome the exception because only Chapter 546 applies to emergency vehicles. *Id.* Finally, the court held that the plaintiff's allegation that the driver drove with conscious indifference or reckless disregard for the safety of others was conclusory; in the absence of ***facts*** to support

the allegation, the plaintiff's pleading did not negate the 9-1-1 or emergency exceptions. *Id.* at 3-4.

Payne's allegations are too conclusory to overcome the emergency exception the TTCA's emergency exception under either Texas law or the federal pleading standards.

**B. Plaintiffs fail to negate application of the TTCA's 9-1-1 exception.**

To avoid the 9-1-1 exception, Payne had to plead that her claim: 1) "arises from" an action of an employee; and 2) the action of the employee violates a statute or ordinance applicable to the action of the employee. *See Denby*, 2022 WL 3588753, at *7.

Payne alleged that Officer Cabrera did not respond to an 9-1-1 call that day at all. ROA.7, ROA.13, ROA.32-33. But as Houston argued to the district court, this allegation was not entitled to a presumption of truth because Officer Cabrera testified repeatedly that he was responding to a call that originated from the 9-1-1 system regarding a suspected DWI. ROA.125, ROA.320, ROA.324-25. He remained assigned to that call at the time of the accident. ROA.152. And as described in section III.A.1. and III.A.2., Officer Cabrera's testimony describes how did not violate any applicable law.

Payne's response to Houston's motion to dismiss argued that "no emergency or 9-1-1 emergency existed". ROA.365. But the 9-1-1 exception is not

so limited. *See Denby*, 2022 WL 3588753, at *5. Rather, by its plain language, the exception applies to any action that involves "responding to a 9-1-1 emergency call." Tex. Civ. Prac. & Rem. Code § 101.062. Payne presented no argument or authority the clearly and equivocally excludes application of the 9-1-1 exception when the officer remains assigned to an emergency call for service that originated from the 9-1-1 system. In the absence of such authority, the district court should have granted Houston's motion to dismiss.

### C. The District Court's analysis for Officer Cabrera's dismissal necessitated dismissal of Payne's TTCA claims.

The District Court provided no rationale for why it was denying Houston's motion to dismiss Payne's TTCA claims. ROA.464. However, in dismissing Payne's § 1983 claims against Officer Cabrera, the court held:

> [H]ere the accident occurred on a six lane street and not a residential neighborhood, when the Decedent turned into oncoming traffic. While tragic, the file supports that this was a pure accident that occurred while Cabrera was on duty, following procedures, and attached to a police activity.

ROA.468.

The district court's acknowledgment that Charles Payne Sr. turned into oncoming traffic is equally dispositive of Payne's TTCA claims against Houston. As previously discussed, both the TTCA's 9-1-1 and emergency exceptions require a plaintiff plead and prove a causal nexus between their injuries and the illegal and/or

reckless acts of the governmental actor. *See* Sections II.B.4 and II.C., *supra*. Payne did not negate that causal nexus in her complaint because she expressly pled that Charles Payne turned into oncoming traffic. ROA.468 (citing complaint).

And although Payne pled that "Mr. Payne navigated the turn in a reasonable and safe manner" ROA.8, this is a conclusion that is not entitled to a presumption of truth. Furthermore, from the evidence attached to Houston's motion for summary judgment—matters of public record that were attached to Houston's motion to dismiss—establishes the contrary. Mr. Payne had a duty to yield to oncoming traffic yet barely even slowed down before turning into oncoming traffic. ROA.227-28, ROA.257-58. Payne's own experts in the state court matter conceded that Charles Payne had a duty to yield to oncoming traffic but did not do so, thereby entering the intersection illegally. ROA.257-58, ROA.279. Had he stopped for just two seconds, the accident would not have occurred. ROA.228. Charles Payne caused this collision by turning into oncoming traffic while in the midst of a diabetic emergency and heart attack. ROA.155. Payne's complaint, therefore, did not negate application of the 9-1-1 or emergency exceptions, because Payne did not plausibly alleged fact to suggest the requisite causal nexus. Instead, as the district court observed, this was simply a tragic accident from Charles Payne Sr. turning into oncoming traffic.

### D. Negligence per se is not cognizable under the TTCA.

Payne alleged negligence per se theories in addition to negligence. ROA.32.

Negligence per se is a concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person. *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979) (citing *Moughon v. Wolf*, 576 S.W.2d 603, 604 (Tex. 1978)). In such a case, the jury is not asked to decide whether or not the defendant acted as a reasonably prudent person would have acted under the same or similar circumstances; the statute itself states what a reasonably prudent person would have done. *Id.* If an excuse is not raised, the only inquiry for the jury is whether or not the defendant violated the statute or regulation and, if so, whether the violation was a proximate cause of the injury. *Id.*

Not every statutory violation can be the predicate for a negligence per se theory. *Reeder v. Daniel*, 61 S.W.3d 359, 362 (Tex. 2001); *Perry v. S.N.*, 973 S.W.2d 301, 304 n.4 (Tex. 1998). Where the statute imposes a duty that is not absolute, but rather is conditional, violation of the statute does not constitute negligence per se; instead, the "reasonable person" standard of common law negligence is read into the statute. *Supreme Beef Packers, Inc. v. Maddox*, 67 S.W.3d 453, 456 (Tex. App.—Texarkana 2002, pet. denied).

### 1. The TTCA does not clearly and unequivocally waive immunity for negligence per se theories.

The Waco Court of Appeals has twice held that the TTCA does not clearly and unequivocally waive immunity for claims based upon negligence per se. *Tex. Dep't of Crim. Just. v. Parker*, No. 10-18-00024-CV, 2020 WL 5833869, at *6 (Tex. App.—Sept. 30, 2020, no pet.) (mem. op.); *Thoele v. Tex. Dep't of Crim. Just.*, No. 10-18-00249-CV, 2020 WL 7687864, at *6 (Tex. App.—Waco Dec. 22, 2020, no pet.). In *Thoele*, plaintiff's suit was dismissed pursuant to the state's Rule 91a motion to dismiss. *Id.* at 1. The Waco Court of Appeals affirmed. *Id.* Relevant here, the court recognized that the TTCA provides a limited waiver of the immunity from suit for certain negligent acts committed by governmental employees. *Id.* at *3. And that wavier must be by "clear and unambiguous language." *Id.* at *4. Because Thoele identified no section of the TTCA that waives immunity for claims based on negligence per se, the dismissal was affirmed. *Id.* at *6.

Holding otherwise would violate the "special rules" that circumscribe this Court's analysis. *See* Section II.A., *supra*.[5]

---

[5] The Houston First and Fort Worth courts of appeals have allowed a negligence per se claim to survive in the TTCA context. *Cruz*, 2023 WL 8938408, at *10–11; *McDonald v. City of the Colony*, No. 2-08-263-CV, 2009 WL 1815648, at *7 (Tex. App.—Fort Worth June 25, 2009, no pet.) (mem. op.). The Texas Supreme Court recently requested briefs on the merits where Houston requested the Court resolve the split of authority among the Texas Courts. *See* Cause No. 24-0428, *City of Houston v. Chelsea Manning*, in the Supreme Court of Texas *available at:* https://search.txcourts.gov/Case.aspx?cn=24-0428&coa=cossup.

**2. Viewing the TTCA wholistically, the absence of a violation of statute in the motor vehicle waiver—where other exceptions and exclusions are predicated on statutory violation—should be construed as rejecting negligence per se theories.**

This Court has recognized that courts must view statutes as a whole and presume the statutory language was included—and ***excluded***—deliberately and purposefully. *Hogan v. Zoanni*, 627 S.W.3d 163, 169 (Tex. 2021) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)). The TTCA only expressly mentions violation of a statute in two different provisions: the emergency exception and the 9-1-1 exception, which reinstate immunity that would otherwise be waived under 101.021. *See* Tex. Civ. Prac. & Rem. Code §§ 101.055(2); 101.062. These exceptions apply unless the actions of the government employee violate an applicable law or ordinance. Tex. Civ. Prac. & Rem. §§ 101.055(2); 101.062. The absence in § 101.021 of similar reference to violation of an applicable law or ordinance is significant and must be construed as deliberate and purposeful rejection of a negligence claim premised upon statutory violation. *See Hogan*, 627 S.W.3d at 169.

**3. If the Legislature had clearly and unequivocally intended to waive governmental immunity for violations of the Transportation Code, it would have indicated as such in the Transportation Code.**

The Legislature has enacted statutes that expressly waive governmental immunity for violations of those statutes. *See, e.g.*, *Dohlen*, 643 S.W.3d at 390

(recognizing that the "Save Chick-fil-a law" waives governmental immunity for violations of the statute); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 763 (Tex. 2018) ("The TCHRA waives immunity from suit only for statutory violations, which means the trial court lacks subject-matter jurisdiction over the dispute absent some evidence the school district violated the TCHRA."); *Lueck*, 290 S.W.3d at 881 (recognizing that the Whistleblower Act waives governmental immunity from suit).

The Transportation Code itself imposes no such language. *Austin Indep. Sch. Dist. v. Salinas*, No. 03-14-00209-CV, 2016 WL 1566707, at *6 (Tex. App.—Austin Apr. 14, 2016, no pet.) (mem. op.) (recognizing the Transportation Code sections do not contain language to support a waiver of governmental immunity). Rightly so, because most of the code does not establish a mandatory standard of conduct, but rather reflect a standard of care for which the duty of compliance is conditioned on what is possible or practicable. *Perry*, 973 S.W.2d at 307; *Supreme Beef Packers*, 67 S.W.3d at 458.

Indeed, Payne pled as the statutory predicate for negligence per se theories Transportation Code sections 545.351[6] and 545.401[7]. ROA.32. Numerous Texas courts have held that neither of these provisions can be the statutory predicate for negligence per se. *Williams v. Mutia*, No. 01-19-00340-CV, 2021 WL 3729312, at *7 (Tex. App.—Houston [1st Dist.] Aug. 24, 2021, no pet.) (mem. op.) (§ 545.401); *Donahoe v. Jones*, No. 01-15-00191-CV, 2016 WL 796892, at *3 (Tex. App.—Houston [1st Dist.] Mar. 1, 2016, no pet.) (mem. op.) (§ 545.351).

At the bare minimum, the Court should reverse and render judgment dismissing Plaintiffs' negligence per se theories.

[6] "An operator may not drive at a speed greater than is reasonable and prudent under the circumstances then existing." Tex. Transp. Code § 545.351.

[7] "RECKLESS DRIVING; OFFENSE. (a) A person commits an offense if the person drives a vehicle in wilful or wanton disregard for the safety of persons or property." Tex. Transp. Code § 545.401(a).

## CONCLUSION

The Court should reverse and render judgment dismissing plaintiff's TTCA claims for lack of subject-matter jurisdiction.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**
**CHRISTY L. MARTIN**
**Chief, Torts/Civil Rights Section**

Date: October 29, 2024 By: */s/ Christy L. Martin*
ATTORNEY IN CHARGE
SBN: 24041336
FBN: 754168
832.393.6438
christy.martin@houstontx.gov
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby, 4th Floor
Houston, Texas 77002
832.393.6259 Facsimile

***Attorneys for Defendant - Appellant,***
***City of Houston, Texas,***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded electronically through the electronic filing manager on October 29, 2024, to all counsel of record.

*/s/Christy L. Martin*
CHRISTY L. MARTIN

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing was prepared in Microsoft Word 2016 MSO 64-bit in Times New Roman 14 point font; the word-count function shows that, excluding those sections exempted under FRAP 31(f), the brief contains 9,544 words.

*/s/Christy L. Martin*
CHRISTY L. MARTIN